## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00913-SKC-TPO

LEVENT TUNCEL, Individually and on Behalf of All Others Similarly Situated,

       Plaintiff,

  v.

THOMAS SANDGAARD, and
DANIEL MOORHEAD,

       Defendants

---

Civil Action No. 1:26-cv-00714-SKC-TPO

KENT BEIDEL, Individually and on Behalf of All Others Similarly Situated,

       Plaintiff,

  v.

THOMAS SANDGAARD,
ANNA LUCSOK,
DANIEL MOORHEAD,
BARRY D. MICHAELS,
MICHAEL CRESS, and
JOSHUA DISBROW,

       Defendants.

---

**BEIDEL'S OPPOSITION TO TUNCEL'S MOTION TO CONSOLIDATE
RELATED ACTIONS AND TO VACATE THE APRIL 21, 2026 DEADLINE
PUBLISHED IN THE *BEIDEL* ACTION**

Kent Beidel ("Beidel"), plaintiff in Civil Action No. 1:26-cv-00714-SKC-TPO (the "*Beidel* Action"), submits this response to Levent Tuncel's ("Tuncel") Motion to Consolidate Related Actions and to Vacate the April 21, 2026 Deadline in the *Beidel* Action (ECF No. 43) (the "Motion").[1]  Beidel requests that the Court deny Tuncel's request to vacate the April 21, 2026 lead plaintiff deadline in the *Beidel* Action and hold his motion to consolidate in abeyance pending development of a full record.

## I.  <u>INTRODUCTION</u>

Plaintiffs Beidel and Tuncel disagree on the proper defendants, claims, class period, and ultimately the appropriate representative plaintiff and counsel to prosecute claims brought on behalf of Zynex, Inc. ("Zynex" or the "Company") investors who lost money due to the rampant fraud that resulted in the Company's bankruptcy and the indictment of its most senior officers.

With respect to consolidation, Tuncel rushed to Court without even conferring with defendant Thomas Sandgaard, whose counsel recently appeared in the year-old *Tuncel* Action.  Nor was Tuncel able to confer with the four additional defendants in the *Beidel* Action, two of whom have only recently been served.  Importantly, due process concerns are at issue, as the purchasers of millions of Zynex shares who are not included in the *Tuncel* Action have not yet been heard, an opportunity which will first arise in connection with the approaching April 21, 2026 lead plaintiff deadline in the *Beidel* Action.  There is simply no legitimate reason to bypass the opportunity

---

[1]    Unless otherwise noted, all references to "ECF No." herein refer to the docket entries in the *Tuncel* Action.

1

for all parties to be heard.

Further, while Beidel agrees that the *Tuncel* Action and *Beidel* Action involve overlapping facts and claims, he opposes consolidation with the *Tuncel* Action at this time to the extent Tuncel takes the position that Beidel's extended class period is improper. To the contrary, it is Tuncel's failure to expand the class before now that is questionable. In connection with his forthcoming lead plaintiff motion, Beidel will show exactly why the class period in the *Beidel* Action is necessary and appropriate for any fully inclusive and effective consolidated action, as well as why equity and fairness require the lead plaintiff process to be reopened.

Similarly, Tuncel seeks to "vacate" the April 21, 2026 deadline previously set forth in Beidel's published notice of filing of the *Beidel* Action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ("not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class"). The determination of whether the lead plaintiff process should be reopened, like the appropriateness of consolidation, should be made only after full briefing on a complete record and after all interested parties have been given an opportunity to be heard. Indeed, Tuncel's assertion that the April 21, 2026 deadline "only serves to delay adjudication on the merits" (ECF No. 43 at 7) rings hollow where, a year into the *Tuncel* Action, he deferred the filing of an amended complaint (while providing no hint of what he might allege), with no certain date set for that event.

As explained more fully below, the questions of consolidation and whether the lead plaintiff process should be reopened are best addressed in the ordinary course, on a fuller record.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The *Tuncel* Action

On March 11, 2025, after the market closed, Zynex (at the time, NASDAQ: ZYXI) reported its fourth quarter and full year 2024 financial results, revealing a significant revenue shortfall in the quarter "due to slower than normal payments from certain payers."   ECF No. 1, ¶5.   Zynex further revealed that the health insurance program for the U.S. military, Tricare, which accounted for 20% to 25% of Company revenue, "has temporarily suspended payments as they review prior claims." Id., ¶¶5, 35.  On this news, Zynex's stock price dropped about 50%, closing at $3.41 per share on March 12, 2025.  Id., ¶¶6, 36.

Exactly *eight* days later, on March 20, 2025, Tuncel filed his class action complaint against Zynex, its CEO (Thomas Sandgaard), and its CFO (Daniel Moorhead).  ECF No. 1, ¶¶14-15.  Tuncel, who purchased all of his ZYXI shares on April 30, 2024, pleaded a putative class period of March 13, 2023 to March 11, 2025, and asserted roughly $17,000 in damages.  *See* Id., ¶1.  Tuncel's complaint left out millions of injured shares by pleading an artificially abbreviated class period.  The reasons for this artificial abbreviation can be explored in connection with the upcoming April 21 motions.  Plainly, Tuncel was on notice that more needed to be

done. The STAT report (a medical industry publication) and a Travelers Insurance[2] lawsuit involving Zynex (Id., ¶¶3, 30) would have put Tuncel's counsel on inquiry notice that the alleged class period was insufficient and that defendants' misconduct predated Tuncel's stated class period by years. *See Beidel* Action, ECF No. 1, ¶¶5, 6, 18, 44, 98, 111.

On May 19, 2025, Tuncel filed an unopposed motion for appointment as lead plaintiff and appointment of his counsel, Glancy Prongay Wolke & Rotter LLP, as lead counsel. ECF No. 11. No further substantive action followed for approximately seven months, notwithstanding the impending five-year statute of repose under the Securities Exchange Act of 1934 ("Exchange Act")—*which ultimately would have expired but for the action taken by Beidel to preserve those claims. See* Section II(B), below.

On February 4, 2026, the Court granted Tuncel's unopposed motion for appointment as lead plaintiff and approval of his choice of counsel. ECF No. 36. Tuncel's motion to consolidate and vacate the April 21, 2026 statutory deadline in the *Beidel* Action was subsequently filed in the *Tuncel* Action on March 3, 2026. ECF No. 43.

To date, Tuncel has not filed an amended complaint. Instead, by motion filed on March 17, 2026, Tuncel, jointly with defendants Sandgaard and Moorhead, sought to further defer the amended complaint (ECF No. 44), which is now scheduled to be

---

[2]    The Travelers lawsuit was filed on August 23, 2023, then unsealed on December 16, 2024. *See Beidel* Action, ECF No. 1, ¶5.

filed in the *Tuncel* Action within fourteen days of an order on consolidation.  ECF No. 46.

  **B.**  **The *Beidel* Action**

On February 20, 2026, Beidel commenced his action through filing of a complaint (*Beidel* Action, ECF No. 1) alleging an expanded class period, running from February 25, 2021 to December 15, 2025, and naming Sandgaard, Lucsok, Moorhead, and the three members of Zynex's Audit Committee as defendants.  The expanded class period in the *Beidel* Action protects the interests of Zynex investors harmed upon the ultimate materialization of the risk – the date on which Zynex filed its petition for bankruptcy protection under Chapter 11 – and was filed to concretely preserve Beidel's and similarly situated class member claims arising in early 2021 which would otherwise would  have been lost to the statute of repose.

On February 20, 2026, Beidel's counsel issued notice under the Private Securities Litigation Reform Act ("PSLRA") to purchasers of Zynex's securities between February 25, 2021 and December 15, 2025, advising members of the expanded class period that any motion for appointment as lead plaintiff in the *Beidel* Action must be filed by April 21, 2026.  ECF No. 43-8.

### III.   <u>CONSOLIDATION</u>[3]

Although the Tuncel and Beidel actions arise from overlapping facts and legal theories, consolidation at this juncture is premature given the parties' disagreement over the appropriate class period. See *Breaux v. Am. Family Mut. Ins. Co.*, 220 F.R.D. 366, 367 (D. Colo. 2004) (Fed. R. Civ. P. 42 provides "the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties."). Tuncel challenges the expanded class period alleged in the *Beidel* Action, which moves back the start of the class period by more than two years. This dispute goes directly to the appropriate scope of any consolidated pleading, as well as whether the cases should be combined in the first instance. It also helps inform whether the Court should reopen the lead plaintiff process.

Beidel will address these issues in detail in his forthcoming lead plaintiff motion, demonstrating that the extended class period is both necessary to capture the full extent of the alleged misconduct and appropriate to ensure a comprehensive and effective resolution of these actions.

### IV.   <u>THE APRIL 21, 2026 DEADLINE SHOULD STAND</u>

Tuncel requests that the Court vacate the April 21, 2026 lead plaintiff deadline in the *Beidel* Action, arguing that (i) Beidel did not move to be lead plaintiff in the

---

[3]   Tuncel failed to file a notice of his motion to consolidate in the *Beidel* Action, as required by D.C.COLO.LCivR 42.1. Tuncel's Motion also seeks multiple forms of relief in a single filing and may therefore be denied without prejudice under SKC Civ. Practice Standard 7.1A(5).

*Tuncel* Action; and (ii) there is no basis to revisit the lead plaintiff appointment. Beidel submits that Tuncel's arguments are premature and should be made in connection with any lead plaintiff motions filed in the *Beidel* Action by April 21, 2026, as directed by the PSLRA notice, including Beidel's anticipated lead plaintiff motion.

Nonetheless, Tuncel's preemptive arguments against any future lead plaintiff motions lack merit as described below.

A.      **Appointment of Lead Plaintiff in
         the *Tuncel* Action is Not Controlling**

Tuncel begins by arguing that, because Beidel did not move to be lead plaintiff in the *Tuncel* Action, he cannot now serve as lead plaintiff. This is not so, particularly under the unusual circumstances presented here, as the appointment of lead plaintiff under the PSLRA may (and sometimes must) be revisited when allegations in a class action and/or a class period must be materially altered from what they were at the outset. Thus, "[w]hen a complaint is amended, courts must determine whether republication of such a notice – and relitigation of an appropriate lead plaintiff – is warranted under the PSLRA." *Ont. Teachers' Pension Plan Bd. v. Teva Pharm. Indus., Ltd.,* 2020 U.S. Dist. LEXIS 42686, at \*32 (D. Conn. Mar. 10, 2020).[4] The core

---

[4]      Although the cases cited herein involve reopening the lead plaintiff procedure where the initial lead plaintiff amended the complaint to include a broader class period, they remain applicable here because the underlying rationale behind the decisions—that the expanded claims and class periods materially alter the contours of the lawsuit thus calling for a reconsideration of an appropriate lead plaintiff (who may have not been included in the original class period) to represent the interests of the expanded class—remains the same. Further, while Tuncel may amend his complaint to include expanded claims, he cannot include the fulsome class period asserted by Beidel as the statute of repose has started to bar those earlier claims.

consideration is: what is fair to potential class members, and most consistent with the key goals of the PSLRA (which are to attract adequate, typical, and motivated plaintiffs and counsel for the case as it has developed). *See Lane v. Page*, 250 F.R.D. 634, 639-40 (D.N.M. Jul. 2, 2007) (explaining that, under the PSLRA, the most suitable lead plaintiff is the class member "most capable of adequately representing the interest of class members") (citing 15 U.S.C. § 78u-4(a)(3)(B)(i)).

The fact that Tuncel was appointed lead plaintiff in earlier proceedings based on a materially different complaint and class period does not mean that Tuncel must (or should) remain lead plaintiff now. His ability to replead has been constrained by the statute of repose he has been overlooked or been unwilling to acknowledge, while the facts have evolved to require a much larger class period, important new defendants, and substantially expanded facts and claims. Indeed, these developments require that all affected class members be given a proper opportunity to participate as envisioned by the PSLRA.[5]

---

Thus, as the cases cited herein support, there is a legitimate reason to question whether Tuncel can adequately protect the interests of the fully impacted class.

[5] Prior to the commencement of the *Beidel* Action, just a fraction of the class was afforded that opportunity, at an early juncture when Defendants were causing confusion by denying the key facts. That only one applicant stepped forward with very small losses (roughly $17,000 and contrasted with the more than $300,000 in losses suffered by Beidel) shows the class at that earlier juncture could not have perceived the extent and nature of the fraud.

B. **There is a Sound Basis to**
**Revisit the Appointment of Lead Plaintiff**

*(i) **The Beidel Action Differs Materially***
*   ***From the Tuncel Action***

**Class Period.** The *Beidel* Action includes allegations of wrongdoing that spans a class period approximately three years longer than the two-year period alleged in *Tuncel*.[6] This expansion is not a mere matter of months but instead represents an entirely different time period, covering different instances of wrongdoing (and encapsulating different investors). As such, the *Beidel* Action includes large swaths of investors that were previously excluded from Tuncel's shorter class period and who never had the opportunity to seek lead plaintiff appointment. This is not a "thinly veiled attempt to circumvent the PSLRA" nor a "duplicative action" as Tuncel claims. ECF No. 43. Tuncel originally could have pleaded a class period beginning much earlier, but he chose not to. Tellingly, once appointed lead plaintiff, Tuncel chose not to amend to extend his class period, despite knowing that investor claims would soon be lost to the Exchange Act's five-year statute of repose.

Biedel's greatly expanded class period, which necessarily includes an expanded group of affected investors, clearly supports his republication of notice and reopening of the lead plaintiff selection procedure. *See, e.g., In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 940 (S.D. Tex. Nov. 28, 2006) (republication of notice and reopening

---

[6] Tuncel criticizes Beidel's expanded class period, however, for the reasons discussed herein (and also in Beidel's forthcoming lead plaintiff motion), Tuncel's criticisms are unavailing.

9

the lead plaintiff procedure where the amended complaint "substantially expand[ed] the potential class of plaintiffs by adding new claims and significantly expanding the class period" by four months before the original period and nearly two years after the original period).[7]

**Substantive Allegations of the Fraud.** The *Beidel* Action also alleges specific false and misleading statements made during the February 25, 2021 to March 12, 2023 period that were not alleged in the *Tuncel* Action. These include the statements made in earnings calls and SEC filings throughout 2021, 2022, and early 2023 in which Sandgaard and other executives touted robust revenues and growth in orders while concealing the fraudulent overbilling scheme. *Beidel* Action, ECF No. 1, ¶¶47-66. Tuncel cannot now add certain of these false and misleading statements, nor expand the class period back to February 25, 2021, because he is beyond the statute of repose.

Tuncel cites to *In re Thornburg Mortg., Inc. Secs. Litig.*, 629 F. Supp. 2d 1233 (D.N.M. Mar 17, 2009) to support his position that the substantially altered class period and claims do not warrant republication and reopening of the lead plaintiff

---

7    *See also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 U.S. Dist. LEXIS 10780, at *9 (S.D.N.Y. Jun. 1, 2005) (ordering re-publication where the class period was enlarged by seven months); *Dube v. Signet Jewelers Ltd.*, 2017 U.S. Dist. LEXIS 57624, at *3 (S.D.N.Y. Apr. 14, 2017) (ordering republication where class period was expanded by "more than three years.") (emphasis in original); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. May 24, 2013) (ordering republication where the consolidated complaint expanded the class period by two years); *In re Stec, Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 166024, at *8 (C.D. Cal. Mar. 26, 2010) (ordering republication, finding the "expansion of the class period to include the allegations made in [another lawsuit]" would be sufficient to "warrant additional notice to potential lead plaintiffs").

selection procedure. However, *Thornburg* is inapposite. The class period in *Thornburg* was expanded by mere months (ending from August 2007 to March 2008 and only pushing the class period forward, without adding any time at the back-end of the period), whereas here Beidel expands the class period by three years, counting extensions on both the front and back end. Thus, the instant situation is more analogous to *Dube* or *Kaplan, supra.* Moreover, the plaintiffs in *Thornburg* sought to add new claims that were related to the original claims. Here, however, Beidel's new claims not only stem from new facts (such as those based upon the Allstate litigation, the July 2025 10-Q, and the federal criminal indictment), but they also involve the Audit Committee's role in approving share repurchases (and the Sandgaard repurchase), and a large repurchase from primary defendant Sandgaard, which are unrelated to the claims asserted in the *Tuncel* Action. *See Beidel* Action, ECF No. 1, ¶¶45, 46, 158-67. As with the expanded class period, these new claims change the contours of the lawsuit and justify Beidel's republication and the reopening of the lead plaintiff appointment process, and support allowing class members to be heard on April 21, 2026.

### (ii)   Zynex Investors Should Be Provided the Opportunity to Be Heard

The April 21, 2026 deadline should not be vacated, as doing so would deprive a substantial number of injured Zynex investors of the opportunity to present their arguments as to why they should be appointed lead plaintiff in this still early-stage litigation. *See Kaplan*, 947 F. Supp. 2d at 367 (ordering republication in similar circumstances and for similar reasons). There is no legitimate basis to deny these

11

investors—including Beidel—the opportunity to be heard.

## V.     **CONCLUSION**

For these reasons, Beidel requests that the Court deny or defer Tuncel's Motion

at this stage.

Dated: March 24, 2026

Respectfully submitted,

**JOHNSON FISTEL, PLLP**

By: */s/ Jeffrey A. Berens*
Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, CO 80238-2300
Telephone: (303) 861-1764
Email: jeffb@johnsonfistel.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
Christopher M. Brain
260 Madison Ave., 22nd Floor
New York, NY 10016
Telephone: (212) 983-1300
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com
Email: cbrain@gme-law.com

**THE PASKOWITZ LAW FIRM, P.C.**
Laurence D. Paskowitz
The Contour
97-45 Queens Blvd., Ste. 1202
Rego Park, NY 11374
Telephone: (212) 685-0969
Email: lpaskowitz@pasklaw.com

12

**LAW OFFICES OF BETH A. KELLER, P.C.**
118 North Bedford Road, Ste. 100
Mount Kisco, New York 10549
Telephone: (914) 752-3040
Email: bkeller@keller-lawfirm.com

**PORTNOY LAW FIRM**
Lesley Portnoy
28310 Roadside Drive, Suite 244
Agoura Hills, CA 91301
Telephone: (310) 692-8883
Email: lesley@portnoylaw.com

*Counsel for Plaintiff Beidel*

13

**CERTIFICATION REGARDING USE OF AI**

Pursuant to SKC Civ. Standing Order (C)(2), the undersigned certifies that, based on consultation with various counsel involved in the preparation of this filing, no portion of the filing was drafted by AI.

*/s/ Jeffrey A. Berens*
Jeffrey A. Berens
JOHNSON FISTEL, PLLP

**CERTIFICATE OF SERVICE**

I, Jeffrey A. Berens, hereby certify that on March 24, 2026 a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all parties with an email address of record who have appeared and consented to electronic service in this action.

*/s/ Jeffrey A. Berens*
Jeffrey A. Berens
JOHNSON FISTEL, PLLP

14